UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MCKAY BURLEY and TYSON THOMAS,

              Plaintiffs,

     v.                               8:24-cv-00716 (AMN/DJS)

CHARLES J. CHAPMAN,

              Defendant.

---

**APPEARANCES:**                         **OF COUNSEL:**

**CNY FAIR HOUSING, INC.**        **CONOR J. KIRCHNER, ESQ.**
731 James Street – Suite 200        **M. CASEY WEISSMAN-**
Syracuse, New York 13203         **VERMEULEN, ESQ.**
*Attorneys for Plaintiffs*

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

On May 29, 2024, plaintiffs McKay Burley and Tyson Thomas ("Plaintiffs") commenced this action pursuant to the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"), New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), and New York State common law against defendant Charles J. Chapman ("Defendant"). Dkt. No. 1 ("Complaint"). Presently before the Court is Plaintiffs' motion for a default judgment under Rule 55(b) of the Federal Rules of Civil Procedure. Dkt. No. 8 ("Motion").

For the reasons set forth below, the Motion is granted in part and denied in part.

## II.    BACKGROUND

### A.  Parties

Plaintiffs describe themselves as gay men who are partners. Dkt. No. 1 at ¶¶ 5-6. They

reside in Massena, New York.  *Id.* at ¶ 8.  Defendant is alleged to be their next-door neighbor.  *Id.* at ¶ 7.

### B.  Factual Allegations

In November 2022, Plaintiffs entered into a contract to purchase the home in which they now reside.  *Id.* at ¶ 8.  They took early possession in December 2022, and then closed on the home early in January 2023.  *Id.*

In February 2023, Defendant moved into the property next door.  *Id.* at ¶ 9.

Beginning in April 2023, Plaintiffs allege that they "endured near-daily harassment" from Defendant "based on their sexual orientation and sex[,]" including "the use of anti-gay slurs, threats of physical violence, menacing behavior, and references to the potential use of weapons." *Id.* at ¶¶ 10-11.  Plaintiffs detail numerous instances of this alleged discriminatory harassment and allege that Defendant "has been criminally charged by law enforcement multiple times for his discriminatory conduct."  *Id.* at ¶ 28; *see also id.* at ¶ 12-27.

Relatedly, Plaintiffs allege that on July 27, 2023, the Town Court of Massena issued an order of protection "requir[ing] Defendant to stay away from Mr. Thomas, to refrain from communicating with Mr. Thomas or Mr. Burley, and prohibit[ing] Defendant from harassing, intimidating, threatening, or otherwise interfering with Mr. Thomas or Mr. Burley."  *Id.* at ¶¶ 29-30.  Between August 2023 and January 2024, Plaintiffs allege that Defendant was charged four times with criminal contempt for violating the order of protection.  *Id.* at ¶¶ 31-35.  Plaintiffs further allege that Defendant has "pleaded guilty to multiple misdemeanors concerning his harassment of Plaintiffs and has been placed on probation for three years."  *Id.* at ¶ 36.

Finally, Plaintiffs allege that Defendant's alleged conduct has negatively affected them in numerous ways, including depriving "Plaintiffs of the full use and enjoyment of their property"

and causing "mental anguish and severe emotional distress[.]"  *Id.* at ¶¶ 37-42.

### C.  Plaintiffs' Legal Claims

Based on their factual allegations, Plaintiffs assert three legal claims.  *Id.* at ¶¶ 43-49.

First, Plaintiffs contend that Defendant's conduct violated two provisions of the FHA, namely (i) "[t]he making of statements with respect to the sale of a dwelling that indicates a preference, limitation, or discrimination based on sex, in violation of 42 U.S.C. § 3604(c)[;]" and (ii) by "[c]oercing, intimidating, threatening, or interfering with persons in their enjoyment of a dwelling based on sex, in violation of 42 U.S.C. § 3617[.]"  *Id.* at ¶ 44(a)-(b).

Second, Plaintiffs contend that Defendant's conduct similarly violated two provisions of the NYSHRL, namely (i) "[t]he making of statements with respect to the sale of a dwelling that indicates preference, limitation, or discrimination based on sex and/or sexual orientation, in violation of N.Y. Exec. Law § 296(5)(a)(3)[;]" and (ii) "[r]etaliation and discrimination against Plaintiffs because they opposed Defendant's discriminatory conduct by contacting law enforcement, in violation of N.Y. Exec. Law § 296(7)."  *Id.* at ¶ 46(a)-(b).

Third, Plaintiffs contend that Defendant's conduct constituted the intentional inflection of emotional distress against them under New York State law ("IIED").  *Id.* at ¶¶ 47-49.

### D.  Procedural History

Plaintiffs commenced this suit on May 29, 2024.  *Id.*  Defendant was personally served on or about June 17, 2024.  Dkt. No. 4.  Despite service, Defendant has failed to respond to the Complaint or enter an appearance.  *See generally* Docket Sheet.

On August 22, 2024, Plaintiffs filed a request for the entry of default pursuant to Rule 55(a) of the Federal Rule of Civil Procedure, a request which the Clerk of Court subsequently granted. Dkt. Nos. 5-6.  Plaintiffs then filed the Motion on September 26, 2024.  Dkt. No. 8.

### III.    STANDARD OF REVIEW

Rule 55 of the Federal Rules of Civil Procedure "provides a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)).  The first step is governed by Rule 55(a), which provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." *Id.* (quoting Fed. R. Civ. P. 55(a)); *see also* N.D.N.Y. L.R. 55.1 (setting forth affidavit requirements).  Entry of a default "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Id.*  The second step "requires the plaintiff to seek a judgment by default under Rule 55(b)." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 505 (2d Cir. 2011).  Entry of a default judgment "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled[.]" *Mickalis*, 645 F.3d at 128.  A default judgment "must ordinarily be entered by the district judge, rather than by the clerk of court, except in certain circumstances[.]" *Id.*; *see also* N.D.N.Y. L.R. 55.2 (setting forth requirements for requesting a default judgment).

"Before entering a default judgment, the court 'must ensure that (1) jurisdictional requirements are satisfied, (2) the plaintiff took all the required procedural steps in moving for [a] default judgment, and (3) the plaintiff's allegations, when accepted as true, establish liability as a matter of law.'" *Windward Bora, LLC v. Brown*, No. 21-cv-03147, 2022 WL 875100, at *2 (E.D.N.Y. Mar. 24, 2022) (alteration in original) (quoting *Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-cv-6722, 2020 WL 1694356, at *4 (E.D.N.Y. Apr. 7, 2020)).  Additionally, "[t]here must

be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 233 (2d Cir. 2012) (citations omitted). When evaluating a request for a default judgment, a "district court is empowered under Rule 55(b)(2), in the exercise of its discretion, to 'conduct hearings or make referrals' as may be necessary, *inter alia*, to determine the amount of damages or establish the truth of the plaintiff's allegations." *Mickalis*, 645 F.3d at 129 (quoting Fed. R. Civ. P. 55(b)(2)(B)-(C)).

While a court may enter a default judgment if the requisite standard is satisfied, the Second Circuit has cautioned that default judgments "are generally disfavored and are reserved for rare occasions[.]" *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). "Because we have 'a strong preference for resolving disputes on the merits,' and because 'a default judgment is the most severe sanction which the court may apply,' . . . we have characterized a district court's discretion in proceeding under Rule 55 as 'circumscribed.'" *Mickalis*, 645 F.3d at 129 (first quoting *Green*, 420 F.3d at 104; then quoting *Enron*, 10 F.3d at 95; and then citing *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004)).

## IV.    DISCUSSION

### A.  Jurisdictional Requirements

The Court first addresses its jurisdiction over this matter. While a "plaintiff has the burden to establish jurisdiction, a federal court has an independent obligation to determine whether subject-matter jurisdiction exists 'even in the absence of a challenge from any party.'" *Wilmington Sav. Fund Soc'y, FSB as tr. of Aspen Holdings Tr. v. Fernandez*, 712 F. Supp. 3d 324, 330

(E.D.N.Y. 2024) (quoting *Chapman v. U.S. Dep't of Just.*, 558 F. Supp. 3d 45, 48 (E.D.N.Y. 2021)).  Federal question jurisdiction exists over Plaintiffs' FHA claim, 28 U.S.C. § 1331, and supplemental jurisdiction exists over Plaintiffs' state law claims, 28 U.S.C. § 1367.  The Court also has personal jurisdiction over Defendant because he resides in this District and has been served.  Dkt. No. 4.  And venue is proper in this District, as it is where Defendant resides and where relevant events allegedly occurred.  28 U.S.C. § 1391; Dkt. No. 1 at ¶ 4.  Accordingly, the Court finds that the jurisdictional requirements are satisfied.  *Windward Bora*, 2022 WL 875100, at *2.

### B.  Procedural Requirements

Here, Plaintiffs requested and received an entry of default in compliance with Rule 55(a) and Local Rule 55.1.  Dkt. Nos. 5-6.  Next, Plaintiffs properly filed the present Motion in accordance with Rule 55(b).  Dkt. No. 8.  The Motion does not include a certificate of service demonstrating that Defendant received the Motion.  *See generally id.*  But because Defendant was served at the commencement of this action and has not "appeared personally or by a representative," Fed. R. Civ. P. 55(b)(2), Plaintiffs were not required to effectuate further service with respect to the Motion.  *See, e.g., Alston v. City of New York*, No. 22-cv-5395, 2024 WL 4100175, at *5 (E.D.N.Y. Sept. 5, 2024) ("This limitation in the rule is based on the common-sense assumption that if a party has ignored service of a summons and complaint, a plaintiff does not have to chase him down with subsequent notices to see if he has changed his mind."), *appeal filed*, No. 24-2521 (2d Cir. Sept. 25, 2024); *Rove LLC v. Antonio168*, No. 20-cv-02124, 2023 WL 6796034, at *3 n.4 (S.D.N.Y. Oct. 13, 2023) (similar).  Accordingly, the Court finds that Plaintiffs have satisfied the procedural requirements for seeking a default judgment.  *Windward Bora*, 2022 WL 875100, at *2.

### C.  Liability as a Matter of Law

"To enter a default judgment, a district court must determine whether—after taking all well-pleaded allegations as true and making reasonable inferences in the plaintiff's favor—the plaintiff's 'allegations establish . . . liability as a matter of law.'" *Henry v. Oluwole*, 108 F.4th 45, 55 (2d Cir. 2024) (alteration in original) (first quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); and then citing *Mickalis*, 645 F.3d at 137 n.23); *see also Moore v. Booth*, 122 F.4th 61, 69 (2d Cir. 2024) ("[W]e have explained that 'prior to entering [a] default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.'") (second alteration in original) (quoting *Mickalis*, 645 F.3d at 137).

### 1.  FHA Claim

Plaintiffs argue that Defendant's conduct constituted (i) discriminatory statements in violation of Section 3604(c), and (ii) discriminatory interference in violation of Section 3617. Dkt. No. 8-3 at 8-18;[1] *see also* Dkt. No. 1 at ¶ 44(a)-(b).

"The federal housing laws articulate a broad and clear public policy against discrimination in housing and housing related transactions[.]" *Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 156 (2d Cir. 2025) (citing, *inter alia*, 42 U.S.C. § 3601), *petition for cert. filed*, No. 25-229 (U.S. Aug. 27, 2025). "To this end, the FHA bans discrimination on the basis of 'race, color, religion, sex, familial status or national origin' in connection with the sale and rental of housing and other private real estate transactions." *Cnty. of Westchester v. U.S. Dep't of Hous. & Urb. Dev.*, 802 F.3d 413, 416 n.3 (2d Cir. 2015) (*per curiam*) (citing 42 U.S.C. §§ 3604, 3605).

---

[1] Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the document's internal pagination.

Under Section 3604(c) of the FHA, it is unlawful to "make, print, or publish, or cause to be made, printed or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin[.]"  42 U.S.C. § 3604(c); *see also* 24 C.F.R. § 100.50(b)(4).  Section 3604(c) "also 'protect[s] against [the] psychic injury' caused by discriminatory statements made in connection with the housing market."  *United States v. Space Hunters, Inc.*, 429 F.3d 416, 424 (2d Cir. 2005) (alterations in original) (quoting Robert G. Schwemm, *Discriminatory Housing Statements and § 3604(c): A New Look at the Fair Housing Act's Most Intriguing Provision*, 29 Fordham Urb. L.J. 187, 250 (2001)) (additional citation omitted).  According to Plaintiffs, a plaintiff alleging discriminatory statements under Section 3604(c) "must prove that: (1) the defendant made a statement; (2) the statement was made with respect to the sale or rental of a dwelling; and (3) the statement indicated a preference, limitation, or discrimination on the basis of a protected characteristic."  Dkt. No. 8-3 at 17 (citing *CNY Fair Hous., Inc. v. Swiss Village, LLC*, No. 21-cv-1217, 2022 WL 2643573, at *4 (N.D.N.Y. July 8, 2022)).

The Motion does not explain how Defendant's alleged statements were made "with respect to the sale or rental of a dwelling[.]"  42 U.S.C. § 3604(c); *see generally* Dkt. No. 8-3 at 16-18. Plaintiffs also do not allege that Defendant made any statements in connection with the purchase of their home.  *See generally* Dkt. No. 1.  Instead, Plaintiffs allege that they completed the purchase in "early-January 2023," *id.* at ¶ 8; that Defendant "moved into the neighboring property as a tenant in February 2023," *id.* at ¶ 9; and that Defendant's alleged discriminatory statements began "in April 2023," *id.* at ¶ 10.  As a result, Plaintiffs have not alleged that Defendant's statements were

"made in connection with the housing market."[2]  *Space Hunters*, 429 F.3d at 424.  Accordingly, the Court denies this portion of the Motion and dismisses this prong of Plaintiffs' FHA claim. *Henry*, 108 F.4th at 55; *Danser v. Bagir Int'l*, 571 F. App'x 54, 55 (2d Cir. 2014) (affirming district court's denial of plaintiff's motion for default judgment and dismissal of plaintiff's complaint).

Under Section 3617 of the FHA, it is "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by" enumerated sections of the FHA.  42 U.S.C. § 3617; *see also* 24 C.F.R. § 100.400.  "To prevail on a Section 3617 claim, a plaintiff must show that: '(1) she is a member of a protected class under the FHA, (2) she was engaged in the exercise or enjoyment of her fair housing rights, (3) [d]efendants were motivated in part by an intent to discriminate, and (4) [d]efendants coerced, threatened, intimidated or interfered with [p]laintiff on account of her protected activity under the FHA.'"  *Birch Fam. Servs., Inc. v. Wlody*, No. 19-cv-03301, 2021 WL 2312852, at *6 (E.D.N.Y. June 7, 2021) (alterations in original) (quoting *Lachira v. Sutton*, No. 05-cv-1585, 2007 WL 1346913, at *18 (D. Conn. May 7, 2007)), *aff'd*, 2022 WL 1468160 (2d Cir. May 10, 2022).

The Court is not persuaded that Plaintiffs' allegations establish, as a matter of law, that Defendant's conduct violated Section 3617 of the FHA.  *Moore*, 122 F.4th at 69.

As an initial matter, Plaintiffs' Section 3604 claim has been dismissed and "[t]he Second Circuit has previously declined to find that § 3617 provides an independent basis for liability."

---

[2] Because Plaintiffs have not satisfied this element, the Court need not address the others.  *See also David v. Whittaker*, No. 24-cv-699, 2024 WL 4512407, at *5 n.4 (N.D.N.Y. Oct. 17, 2024) ("[T]he Court is unaware of any controlling authority recognizing neighbor-on-neighbor § 3604(c) disparate treatment claims.  Equally problematic, it remains an open question within the Second Circuit whether § 3604 reaches post-acquisition conduct.") (collecting cases).

*David*, 2024 WL 4512407, at *6 (citing *Frazier v. Rominger*, 27 F.3d 828, 834 (2d Cir. 1994));

*see also Birch*, 2021 WL 2312852, at *5 ("[I]t is not clear that a nexus between a Section 3617

claim and the sections enumerated therein i[s] necessary to support a Section 3617 claim and the

Second Circuit has not addressed this issue.") (collecting cases).  Additionally, "[i]t is unclear to

what extent the FHA prohibits 'post-acquisition' discrimination—that is, discrimination that

occurs after a putative plaintiff acquires housing."  *Haber v. ASN 50th St. LLC*, 847 F. Supp. 2d

578, 584 n.3 (S.D.N.Y. 2012).[3]

Next, some courts have previously found that the FHA does not prohibit discrimination

based on sexual orientation.  *See, e.g., Swinton v. Fazekas*, No. 06-cv-6139, 2008 WL 723914, at

*5 (W.D.N.Y. Mar. 14, 2008) ("Discrimination based on sexual orientation is not covered under

the [FHA.]"); *Miller v. 270 Empire Realty LLC*, No. 09-cv-2857, 2012 WL 1933798, at *5

(E.D.N.Y. Apr. 6, 2012) (same), *report and recommendation adopted*, 2012 WL 1940829

(E.D.N.Y. May 29, 2012).  More recently, however, both the Supreme Court and the Second

Circuit have found that discrimination based on sexual orientation constitutes unlawful

discrimination based on sex, at least with respect to Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e *et seq.* ("Title VII").  *See Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 669-

70 (2020) ("[D]iscrimination based on homosexuality or transgender status necessarily entails

discrimination based on sex; the first cannot happen without the second. . . . As enacted, Title VII

prohibits all forms of discrimination because of sex, however they may manifest themselves or

whatever other labels might attach to them."); *Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 108

---

[3] While seemingly unsettled, there is some authority for asserting standalone claims under Section 3617, *see David*, 2024 WL 4512407, at *6 (collecting cases); *Birch*, 2021 WL 2312852, at *6 (collecting cases), as well as some authority for asserting certain post-acquisition claims under Section 3617, *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 88 (2d Cir. 2021) (Lohier, J., dissenting in part and concurring in part); *Haber*, 847 F. Supp. 2d at 584 n.3 (collecting cases).

(2d Cir. 2018) (*en banc*) ("[W]e now hold that Title VII prohibits discrimination on the basis of sexual orientation as discrimination 'because of . . . sex.'") (second alteration in original).

Plaintiffs cite three decisions from outside the Second Circuit to support the extension of this Title VII jurisprudence to the FHA.  Dkt. No. 8-3 at 10 (first citing *Larocque v. Spring Green Corp.*, No. 22-cv-00249, 2024 WL 4198607, at *4 (D.R.I. Sept. 16, 2024); then citing *United States v. SSM Props., LLC*, 619 F. Supp. 3d 602, 606 (S.D. Miss. 2022); and then citing *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 862 (7th Cir. 2018)).  And, as Plaintiffs note, there is authority for construing Title VII and the FHA similarly.  Dkt. No. 8-3 at 9-10; *see also Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 539 (2015) ("The FHA, like Title VII and the ADEA, was enacted to eradicate discriminatory practices within a sector of our Nation's economy.") (citations omitted).  However, neither the Second Circuit, nor any district court within its jurisdiction, appears to have addressed this issue.  And the Court is skeptical that a default judgment is the appropriate mechanism to decide an apparent issue of first impression within the Circuit.  *Accord Moore*, 122 F.4th at 69 ("In other words, 'a district court may not enter a default judgment unless the plaintiff's complaint states a valid facial claim for relief.'") (quoting *Henry*, 108 F.4th at 55).

Nonetheless, assuming that Plaintiffs can pursue a standalone, post-acquisition Section 3617 claim and that they are members of a protected class, the Court is not persuaded that Plaintiffs' allegations concerning statements by their neighbor are sufficient to establish liability under Section 3617 of the FHA.  *See, e.g., Birch*, 2021 WL 2312852, at *8 ("[T]o bring a claim within § 3617, a plaintiff must allege conduct on the part of a defendant[,] which in some way or other implicates the concerns expressed by Congress in the FHA.  If it were otherwise, the FHA would federalize any dispute involving residences and people who live in them.") (alterations in

original) (quoting *United States v. Weisz*, 914 F. Supp. 1050, 1054 (S.D.N.Y. 1996)) (additional citation omitted); *Lachira*, 2007 WL 1346913, at \*19 ("Most of the cases finding a violation of § 3617 involve allegations of force and violence, such as the firebombing of a home or car, physical assaults, vandalism, firing weapons, or other extreme activities designed to drive a person out of his or her home.") (collecting cases); *Egan v. Schmock*, 93 F. Supp. 2d 1090, 1093 (N.D. Cal. 2000) ("[A] § 3617 claim may be based upon discriminatory conduct[] which is designed to drive the individual out of his or her home. Plaintiffs, however, request that the Court interpret § 3617 more broadly to cover *any* discriminatory conduct which interferes with an individual's enjoyment of his or her home. The Court concludes that Congress did not intend that the FHA reach so far. If Plaintiffs' construction were adopted, any dispute between neighbors of different races or religions could result in a lawsuit in federal court under the FHA.") (footnote omitted); *see also Halprin v. Prairie Single Fam. Homes of Dearborn Park Ass'n*, 388 F.3d 327, 330 (7th Cir. 2004); *Ohana v. 180 Prospect Place Realty Corp.*, 996 F. Supp. 238, 243 (E.D.N.Y. 1998).

Accordingly, the Court denies this portion of the Motion. *Henry*, 108 F.4th at 55. This denial is without prejudice to renewal of the Motion, in the event that the Court has overlooked relevant authority in which FHA liability and the remedies sought by Plaintiffs (i.e., compensatory damages, punitive damages, injunctive relief, and the recovery of attorney's fees, *see* Dkt. No. 8-3 at 20-22) have been imposed against a neighbor for conduct analogous to what Defendant is alleged to have done. *See Favata v. JD Motors of CNY, Ltd.*, No. 23-cv-01549, 2025 WL 1649045, at \*10-11 (N.D.N.Y. June 11, 2025) (denying motion for default judgment without prejudice to renewal following further briefing).

### 2. NYSHRL Claim

The Second Circuit has "held that '[c]laims under the FHA and [NYS]HRL § 296 are evaluated under the same framework.'" *Kings Park Manor*, 992 F.3d at 80 (quoting *Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 153 (2d Cir. 2014)). Plaintiffs rely nearly exclusively on this principle and offer no detailed argument in support of entering a default judgment on their NYSHRL claim. *See, e.g.,* Dkt. No. 8-3 at 7 n.1, 11 n.3, 14.

The Court finds that Plaintiffs' allegations have not established Defendant's liability under the NYSHRL as a matter of law. *Moore*, 122 F.4th at 69.

As an initial matter, and unlike the FHA, the NYSHRL expressly includes both sex and sexual orientation as protected characteristics. *See, e.g.,* N.Y. Exec. Law § 296(5)(a). But the discriminatory statement prong of Plaintiffs' NYSHRL claim still fails for similar reasons as those discussed above with respect to Plaintiffs' discriminatory statement claim under the FHA. *See supra* Section IV.C.1. Additionally, it appears that the portion of the NYSHRL on which Plaintiffs rest their claim does not impose liability on individuals who are only neighbors. *See* Dkt. No. 1 at ¶ 46(a) (citing N.Y. Exec. Law § 296(5)(a)); *Fair Hous. Just. Ctr., Inc. v. Broadway Crescent Realty, Inc.*, No. 10-cv-34, 2011 WL 856095, at *8 (S.D.N.Y. Mar. 9, 2011) ("NYSHRL section 296(5) makes the following types of persons liable: 'the owner, lessee, sub-lessee, assignee, or managing agent of, or other person having the right to sell, rent or lease a housing accommodation, constructed or to be constructed, or any agent or employee thereof.'") (quoting N.Y. Exec. Law § 296(5)(a)). Accordingly, the Court denies this portion of the Motion and dismisses this prong of Plaintiffs' NYSHRL claim. *Henry*, 108 F.4th at 55; *Danser*, 571 F. App'x at 55.

The interference prong of Plaintiffs' NYSHRL claim also fails for many of the same reasons as those previously discussed. *See supra* Section IV.C.1; *see also* Dkt. No. 1 at ¶ 46(b).

As a result, this portion of the Motion is denied without prejudice to renewal as well. *Favata*, 2025 WL 1649045, at *10-11.

### 3.    IIED

Under New York law, "a claim for IIED requires a showing of: '(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress.'" *Rich v. Fox News Network, LLC*, 939 F.3d 112, 122 (2d Cir. 2019) (quoting *Howell v. N.Y. Post Co., Inc.*, 81 N.Y.2d 115, 121 (1993)).

Accepting Plaintiffs' allegations as true, they have stated a claim for IIED. Defendant has subjected Plaintiffs "to severe and persistent harassment" "for well over a year." Dkt. No. 8-3 at 19; *see also Rich*, 939 F.3d at 122 ("Under New York law, although '[t]he standard of outrageous conduct is strict, rigorous and difficult to satisfy . . . , that is not the case when there is a deliberate and malicious campaign of harassment or intimidation.'") (alterations in original) (quoting *Scollar v. City of New York*, 160 A.D.3d 140, 146 (1st Dep't 2018)). Plaintiffs each submit affidavits detailing the emotional distress they have experienced as a result of Defendant's conduct. Dkt. Nos. 8-1, 8-2. Plaintiffs have also alleged that they needed to contact law enforcement multiple times because of Defendant; that Defendant violated a related order of protection multiple times; and that Defendant has "pleaded guilty to multiple misdemeanors concerning his harassment of Plaintiffs[.]" Dkt. No. 1 at ¶¶ 14, 28-36. Accepting Plaintiffs' allegations as true, such conduct is "utterly intolerable in a civilized community[.]" *Okudinani v. Rose*, 779 F. App'x 768, 772 (2d

Cir. 2019) (quoting *Howell*, 81 N.Y.2d at 122). As a result, the Court grants this portion of the Motion.[4] *Henry*, 108 F.4th at 55.

### D. Damages

Plaintiffs have requested a hearing to determine damages. Dkt. No. 8-3 at 7, 22. Given the nature of the damages sought, the Court agrees that "it is 'necessary and proper' to hold an inquest on damages" with respect to Plaintiffs' IIED claim. *Cement & Concrete Workers*, 699 F.3d at 233 (quoting *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993)); *see also, e.g., Lation v. Fetner Props., Inc.*, No. 17-cv-3276, 2018 WL 704397, at *2 (S.D.N.Y. Feb. 5, 2018) ("Some district courts in this circuit have suggested that awards in the range of $5,000 to $30,000 are generally appropriate for 'garden variety' emotional distress claims—that is, those claims in which the evidence of mental anguish is limited to the plaintiff's testimony and there is no evidence of medical treatment.") (citation omitted). The Court further exercises its discretion pursuant to Rule 55(b)(2) and refers this matter to United States Magistrate Judge Daniel J. Stewart for the damages inquest. *Mickalis*, 645 F.3d at 129.

## V.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Plaintiffs' Motion, Dkt. No. 8, is **GRANTED in part and DENIED in part**, as set forth in Section IV of this Memorandum-Decision and Order; and the Court further

**ORDERS** that Plaintiffs' claims for discriminatory statements under the FHA and

---

[4] Even in the absence of any federal claim, most of the relevant factors weigh in favor of retaining supplemental jurisdiction in this particular case. *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 117-18 (2d Cir. 2013) ("Courts 'consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise' supplemental jurisdiction.") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *see also* 28 U.S.C. § 1367(c)(3).

NYSHRL, Dkt. No. 1 at ¶¶ 44(a), 46(a), are **DISMISSED**; and the Court further

    **ORDERS** that this matter is referred to Magistrate Judge Stewart for a damages inquest; and the Court further

    **ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

    **IT IS SO ORDERED.**

Dated: September 25, 2025
      Albany, New York

                                Anne M. Nardacci
                                U.S. District Judge