**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

MCKAY BURLEY and TYSON THOMAS,

Plaintiffs,

v. 8:24-cv-00716 (AMN/DJS)

CHARLES J. CHAPMAN,

Defendant.

---

**APPEARANCES:** **OF COUNSEL:**

**CNY FAIR HOUSING, INC.** **CONOR J. KIRCHNER, ESQ.**
731 James Street, Suite 200
Syracuse, NY 13203
*Attorneys for Plaintiff*

Charles J. Chapman
Massena, New York
Defendant *pro se*

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

On May 29, 2024, plaintiffs McKay Burley ("Plaintiff Burley") and Tyson Thomas ("Plaintiff Thomas"; together with Plaintiff Burley, "Plaintiffs") commenced this action pursuant to the federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 *et seq.*, and New York State common law against Charles J. Chapman ("Defendant"). Dkt. No. 1 ("Complaint"). The Complaint was served on Defendant on or about June 17, 2024. Dkt. No. 4. Defendant did not answer the Complaint and on September 26, 2024, Plaintiffs moved for a default judgment under Rule 55(b) of the Federal Rules

of Civil Procedure. Dkt. No. 8. Defendant did not file any opposition to the Motion. *See generally* Docket Sheet.

On September 9, 2025, the Court issued a Memorandum-Decision and Order ("Default Order"), which denied in part and granted in part Plaintiffs' Motion. Dkt. No. 9. The Default Order found that the Complaint failed to state a claim for violation of the Fair Housing Act or NYSHRL and the Court accordingly dismissed those causes of action; but the Court exercised its discretion to retain supplemental jurisdiction over Plaintiffs' intentional infliction of emotional distress claim under New York State common law. *Id.* at 7-15; *see* 28 U.S.C. § 1367. The Court found that the Complaint alleged conduct sufficient to state such a claim and issued a default judgment as to that claim. Dkt. No. 9 at 14-15.

Plaintiffs requested a hearing to determine damages. Dkt. No. 8 at 1. The Court agreed and exercised its discretion pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure to refer the matter to United States Magistrate Judge Daniel J. Stewart for a damages inquest. Dkt. No. 9 at 15-16. Magistrate Judge Stewart held a Damage Inquest Hearing (the "Hearing") on December 11, 2025 in Syracuse, New York, during which both Plaintiffs and Defendant testified. *See* Dkt. No. 18.

On January 12, 2026, Magistrate Judge Stewart issued a report-recommendation and order recommending that the Court enter a judgment in favor of the Plaintiffs and against Defendant for compensatory damages in the amount of $25,000 for Plaintiff Burley and $15,000 for Plaintiff Thomas; and that the Court decline to order punitive damages. Dkt. No. 19 ("Report-Recommendation") at 17. Magistrate Judge Stewart advised that under 28 U.S.C. § 636(b)(1), the parties had fourteen days within which to file written objections and that failure to object to the

Report-Recommendation within fourteen days would preclude appellate review. *Id.* at 18; *see also* Local Rule 72.1(c). Plaintiffs filed objections on January 26, 2026. Dkt. No. 21.

For the reasons set forth below, the Court adopts the Report-Recommendation as modified.

## II. LEGAL STANDARD

This Court reviews *de novo* those portions of a magistrate judge's report-recommendation that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C). If no specific objections have been filed, this Court reviews a magistrate judge's report-recommendation for clear error. *See Petersen*, 2 F. Supp. 3d at 229 (citing Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition). Similarly, if an objection simply rehashes arguments originally presented to the magistrate judge, this Court reviews the relevant portions of the report-recommendation for clear error. *See Petersen*, 2 F. Supp. 3d at 228-29 & n.6 (collecting cases). "When performing such a 'clear error' review, 'the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Dezarea W. v. Comm'r of Soc. Sec.*, No. 21-cv-01138, 2023 WL 2552452, at *1 (N.D.N.Y. Mar. 17, 2023) (quoting *Canady v. Comm'r of Soc. Sec.*, No. 17-cv-0367, 2017 WL 5484663, at *1 n.1 (N.D.N.Y. Nov. 14, 2017)). After appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. DISCUSSION

The Court adopts those aspects of the Report-Recommendation to which no party has raised a specific objection, finding no clear error therein, including the background and the legal framework set forth in the Report-Recommendation, familiarity with which is presumed for purposes of this decision.

Plaintiffs raise thirteen objections to the Report-Recommendation, which can be summarized as follows: Plaintiffs object to the Report-Recommendation's (1) recommendation that their garden variety emotional harm is adequately compensated by damages in the amount of $25,000 (to Plaintiff Burley) and $15,000 (to Plaintiff Thomas); (2) recommendation against ordering punitive damages; and (3) lack of a recommendation regarding pre-judgment interest on the awards. Dkt. No. 21 at 1-3. The Court addresses each of these objections in turn.

**A. Compensatory Damages**

Plaintiffs raise no objection to the Report-Recommendation's determination that their injuries constitute "garden variety" harm, Dkt. No. 21-1 at 13 ("[T]he record contains evidence . . . that strongly suggests an award for each [P]laintiff on the upper end of the garden variety range for several reasons."); but challenge the Report-Recommendation's application of "controlling New York and Second Circuit precedent" in calculating the appropriate range of damages for their claims, Dkt. No. 21 at 1-2. Plaintiffs contend that Magistrate Judge Stewart failed to justify his recommendation that Plaintiff Thomas receive 40% less than Plaintiff Burley; gave undue weight to Plaintiffs' lack of medical testimony; failed to properly account for the impact Defendant's conduct had on the end of Plaintiffs' relationship and Plaintiffs' own behavior; and relied upon distinguishable case law while failing to consider more analogous case law in calculating the proper quantum of damages. Dkt. No. 21 at 2-3. Plaintiffs assert that "controlling New York and Second Circuit precedent" establishes a range of $30,000 to $125,000 in compensatory damages and request an award to each Plaintiff at the top of that range. Dkt. No. 21 at 1-2.

"Awards for mental and emotional distress are inherently speculative." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 162 (2d Cir. 2014). "There is no objective way to assign any

particular dollar value to distress." *Id.* The Court is nevertheless obligated to ensure that any award it grants be "fair, reasonable, predictable, and proportionate." *Id.* Courts determining the proper quantum of damages in intentional infliction of emotional distress cases consider evidence of plaintiffs' emotional harm, including subjective accounts of their distress, any physical manifestations thereof, resultant medical treatment, and effects on their daily lives. *See, e.g.*, *id.* at 163 (considering plaintiff's hospitalization and diagnoses of post-traumatic stress disorder, depression, and panic disorder); *Olsen v. Cnty. of Nassau*, 615 F. Supp. 2d 35, 47 (E.D.N.Y. 2009) (considering plaintiff's loss of patience for family members and pain in her arm and chest); *Lation v. Fetner Props., Inc.*, No. 17-CV-3276 (JPO), 2018 WL 704397, *2 (S.D.N.Y. Feb. 5, 2018) (considering plaintiff's humiliation, anxiety, shame, and stress). Compensatory damages serve to remunerate a plaintiff for the actual harm he has experienced and must be calculated with reference to the severity of that harm, rather than the severity of the defendant's conduct. *See* Restatement (Second) of Torts § 903 (1979), cmt. (a) ("[D]amages given for pain and humiliation . . . give to the injured person some pecuniary return for what he has suffered or is likely to suffer."); *cf. id.* § 908(1) ("Punitive damages are damages . . . awarded against a person to punish him for his outrageous conduct . . . ."); *see Bell v. Helmsley*, No. 111085/01, 2003 WL 1453108, at *8 (N.Y. Sup. Ct. Mar. 4, 2003) (noting that compensatory damages are "intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct.").

Plaintiffs are correct that courts applying New York state law have found compensatory awards as high as $125,000 appropriate in garden variety cases. *See, e.g.*, *Duarte v. St. Barnabas Hosp.*, 341 F. Supp. 3d 306, 325 (S.D.N.Y. 2018) (finding jury award of $624,000 excessive and granting motion for new trial unless plaintiff accepted reduction to $125,000 on remittitur); *Rio Mar Rest. v. New York State Div. of Hum. Rts.*, 704 N.Y.S.2d 230, 231 (2000) (reducing jury award

from $500,000 to $125,000); *see also Allender v. Mercado*, 649 N.Y.S.2d 144, 145 (1996) (upholding jury award of $100,000); *Patterson v. Balsamico*, 440 F.3d 104, 119 (2d Cir. 2006) (similar). The Court cannot, however, agree with Plaintiffs that the floor of the modern range for compensatory damages in garden variety claims is $30,000. *See Lation*, 2018 WL 704397 at * 2 (finding award of $100,000 appropriate but recognizing case law applying a range below $30,000). Contrary to Plaintiffs' assertion that the "modern" range requires an award greater than $30,000 and that Magistrate Judge Stewart's recommendation necessarily relied on "older cases," Dkt. No. 21-1 at 19, recent authority has endorsed a range of $5,000 to $30,000. *See, e.g.*, *Castillo v. Isakov*, No. 22 CIV. 6888 (LJL) (GS), 2024 WL 5323851, at *12 (S.D.N.Y. Dec. 27, 2024), *report and recommendation adopted*, No. 22-CV-6888 (LJL), 2025 WL 89048 (S.D.N.Y. Jan. 14, 2025) (recommending damages award of $25,000 for garden variety emotional distress); *Aponte v. Clinton St. Pizza Inc.*, No. 22-CV-3188 (DEH), 2024 WL 3796806, at *1 (S.D.N.Y. July 19, 2024), *report and recommendation adopted*, No. 22 CIV. 3188 (DEH), 2024 WL 3794335 (S.D.N.Y. Aug. 13, 2024) (recommending damages award of $20,000 each for two plaintiffs' garden variety claims); *Yu v. Shanghai Dumpling, Inc.*, No. 19 CV 07601 (ALC/VF), 2023 WL 8438669, at *6 (S.D.N.Y. Oct. 5, 2023), *report and recommendation adopted*, No. 19-CV-07601 (ALC), 2023 WL 7321595 (S.D.N.Y. Nov. 7, 2023) (recognizing range of $5,000 to $30,000 for garden variety emotional distress awards, and finding award of $25,000 appropriate). The Court accordingly finds that it may use the full range of awards recognized in the case law to guide its determination of the proper award.

Reviewing *de novo*, the Court agrees with Magistrate Judge Stewart that *Mitchell v. Giambruno*, 826 N.Y.S.2d 788 (2006), and *Bell*, 2003 WL 1453108, are instructive. Plaintiffs challenge Magistrate Judge Stewart's reliance upon *Mitchell*, pointing to differences between the

Defendant's conduct and the conduct in *Mitchell*. Dkt. No. 21-1 at 20 (noting the absence of explicit threats of physical harm or death and of any criminal trespass conviction in *Mitchell*). But the details of a defendant's conduct are irrelevant to compensatory damages, once his liability is established. Thus, Plaintiffs' comparison between the two months of sporadic but egregious conduct in *Bell* and their hundred or more "negative interactions with Defendant" is not relevant to the issue of compensatory damages. And, as Plaintiffs concede, the *Mitchell* plaintiffs established their damages via medical testimony regarding their "levels of anxiety and depression worsening," more frequent medical treatment and use of medication, and associated "'indigestion, diarrhea and irritable bowel syndrome'" and multiple periods of hospitalization. *Id.* at 20 (citing *Mitchell*, 826 N.Y.S.2d at 788). In contrast, Plaintiffs' own evidence of harm was limited to their own recitations of the impact on their emotional and physical wellbeing, their use and enjoyment of their property, and their social lives. *Id.* at 21.

Plaintiffs further direct the Court to *Lation v. Fetner Props.* as a more appropriate comparator case. 2018 WL 704397. The *Lation* court awarded $100,000 to compensate a condominium concierge who endured racist and homophobic harassment from a resident-owner for over two years. *Id*. at *2. Like Plaintiffs, the plaintiff in *Lation* did not claim medical costs or other economic damages but described his "humiliation, anxiety, shame, and stress" in his workplace over a 912-day period. *Id.* Plaintiffs urge that they, like the plaintiff in *Lation*, suffered approximately two years of harassment. Dkt. No. 21-1 at 14; *see also* Dkt. No. 18 at 12 (noting over a hundred negative interactions with Defendant "over the past two years.").

Plaintiffs' credible testimony establishes that they have suffered compensable harm. Plaintiff Burley provided extensive testimony regarding the severe emotional distress he experienced, the physical manifestations thereof, and his fear of inviting guests to his home or

using the exterior of his home. *See, e.g.*, Dkt. No. 18 at 14-20, 36, 43-44, 55. He further recalled attending "at least three" therapy sessions in December 2024, motivated in part by Defendant's harassment. *Id.* at 57-59. Plaintiff Thomas provided briefer testimony but similarly recounted his emotional response to Defendant's conduct, as well as resultant physical manifestations. *See, e.g.*, *id.* at 64-65, 67, 68, 70. Each Plaintiff testified regarding challenges in their respective employment attributable to Defendant's conduct as well, although neither testified to any adverse employment consequences beyond a written warning. *Id.* at 51-53; 68-69. And Plaintiffs noted that their two-year relationship ended in part due to Defendant's conduct. *Id.* at 56-57. Nevertheless, the Court notes that neither Plaintiff indicated that their emotional distress and the physical manifestations thereof required medication, resulted in any medical diagnosis, or required hospitalization. Plaintiff Burley provided evidence of his brief mental health treatment but described Defendant's conduct as only the "straw that broke the camel's back" in motivating him to seek treatment, and did not provide counselling records or expert testimony to corroborate his testimony. *Id.* at 57-59. Plaintiff Thomas offered no indication that he required or received medical or mental health treatment in connection with this action. *See id.* at 62-72.

Furthermore, while Plaintiffs describe Defendant's conduct as persisting for two years, *see* Dkt. No. 21-1 at 14, the Complaint and Plaintiffs' testimony suggest that they endured Defendant's harassment primarily between late April 2023 and early January 2024, *see* Dkt. No. 1 at ¶¶ 10, 34; Dkt. No. 18 at 14 (noting that Defendant's actionable conduct stopped in approximately January 2024, but noting subsequent violations of the protective order against Defendant).

The record establishes that Plaintiffs have experienced harms comparable to but less severe than those described in *Mitchell* and *Bell*, and comparable to those described in *Lation* but over a significantly shorter duration. Accordingly, the Court finds that an award in favor of Plaintiff

Burley in the amount of $25,000 and an award in favor of Plaintiff Thomas in the amount of $15,000 adequately compensates Plaintiffs' harms.[1]

**B. Punitive Damages**

Plaintiffs further object to Magistrate Judge Stewart's recommendation against punitive damages. Dkt. No. 21 at 3; Dkt. No. 21-1 at 24-28. Plaintiffs do not appear to dispute Magistrate Judge Stewart's interpretation of the law that "the decision to award punitive damages is discretionary and not mandatory." Dkt. No. 19 at 16, citing *Binghamton Plaza, Inc. v. Gilinsky*, 301 N.Y.S.2d 921 (1969); Dkt. No. 21-1 at 25 ("[p]unitive damages *can* be awarded where the defendant acted maliciously") (emphasis added); *id.* ("Under New York law, punitive damages *may* be awarded where conduct reflects malice or reckless disregard") (emphasis added) (citing *Prozeralik v. Capital Cities Communications, Inc.*, 82 N.Y.2d 466 (1993)). Instead, Plaintiffs argue that Magistrate Judge Stewart (1) failed to consider the "importance of punishment of bad behavior and deterrence of third parties similarly situated" in treating Defendant's financial condition as a "complete bar to punitive damages," *id.* at 27-28; (2) erroneously considered the criminal consequences of Defendant's conduct as evidence that punitive damages were

[1] Plaintiffs' objection that Plaintiff Thomas "endured the most explicit death threats" and accordingly should not receive a substantially lower award than Plaintiff Burley is unavailing. Dkt. No. 21 at 2. As noted above, the Court's analysis turns on the degree to which each Plaintiff has been harmed, not the severity of the conduct that caused that harm. The Court notes that Plaintiff Burley provided a more extensive and detailed account of the harm he experienced than Plaintiff Thomas provided; moreover, Plaintiff Burley, unlike Plaintiff Thomas, sought and incurred expenses for mental health treatment motivated in part by the effects of Defendant's conduct. *See generally* Dkt. No. 18. The record accordingly supports a greater award to Plaintiff Burley.

unnecessary to correct Defendant's conduct, *id.* at 28; and (3) improperly considered Plaintiffs' ability to collect a judgment in determining the propriety of the judgment itself, *id.*[2]

First, the Court finds in its discretion that punitive damages are not necessary to punish Defendant's conduct or deter third parties because those goals can be accomplished by the Court's judgment as to compensatory damages. As a result of his conduct in this case, Defendant already must pay $40,000. *See* Section III(A), *supra*. Defendant provided testimony at the Hearing that his income is limited to $969 per month in Social Security disability benefits, that he is "barely getting by," and that he has basically "zero" financial resources. Dkt. No. 18 at 81; 86. While the Court agrees with Plaintiffs that Defendant's behavior should not be tolerated, the Court finds that an additional award, which Defendant as a practical matter very likely would never pay, would not further the interests of punishing Defendant or deterring similarly situated third parties from the same conduct.

Next, the Court finds in its discretion that the consequences of Defendant's involvement in the criminal justice system counsel against imposing punitive damages. Defendant's criminal conviction, incarceration, and probationary sentence underscore the seriousness of his conduct that gave rise to this action. Nevertheless, as Plaintiffs concede, his conduct improved after he experienced the criminal consequences of his conduct. Dkt. No. 21-1 at 28. The purpose of punitive damages, as Plaintiffs note, is to "'punish the defendant and discourage [him] from acting

---

[2] Plaintiffs urge the Court to follow the "guideposts" set forth by the Supreme Court in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996). Dkt. No. 21-1 at 25. Those guidelines, by Plaintiffs' own description, are used to ensure that "the punitive damages award *amount* is not excessive and, therefore, unconstitutional in nature." *Id.* An inquiry into the appropriate amount of damages necessarily presupposes that the Court has found in its discretion that punitive damages are appropriate, and therefore does not provide guidance as to whether punitive damages should be awarded in the first instance.

in a similar fashion in the future . . . [and] to discourage others similarly situated from acting in a similar way.'" *Id.* at 27 (quoting *Bell*, 2003 WL 1453108 at *3). The Court finds that Defendant's improved conduct, however belated, suggests that he has been discouraged from future misbehavior, and that the criminal consequences that motivated his improvement were adequate to punish him and to discourage third parties from similar behavior.

Last, the Court is unconvinced by Plaintiffs' argument that "the ability of Plaintiffs to collect on a judgment should have no relevance for whether the judgment itself is warranted." Dkt. No. 21-1 at 28. As noted, the imposition of punitive damages is a means to the end of punishing and deterring a defendant's conduct. *Id.* at 27. The Court is unaware of authority compelling it to disregard the practical efficacy of that means, and indeed the Defendant's ability to pay a punitive award is highly relevant to the determination of whether that award will serve its purpose. *See Vasbinder v. Scott*, 976 F.2d 118, 121 (2d Cir. 1992) (noting that a court must consider the defendant's financial resources in determining punitive damages). Punitive damages should not be awarded beyond the amount "reasonably necessary to secure the purposes of such awards." *Aldrich v. Thomson McKinnon Sec., Inc.*, 756 F.2d 243, 249 (2d Cir. 1985). An award that Defendant is unlikely to ever pay due to his financial condition cannot reasonably be necessary to accomplish a punitive purpose.

Accordingly, following *de novo* review, the Court finds that punitive damages are not warranted in this case.

**C. Pre-Judgment Interest**

Finally, Plaintiffs object to Magistrate Judge Stewart's failure to recommend that pre-judgment interest dating back to February 2024 be assessed on the damages awarded by the Court. Dkt. No. 21 at 3; Dkt. No. 21-1 at 29. Plaintiffs direct the Court to *Lation v. Fetner Props., Inc.*,

in which the court awarded prejudgment interest at the New York statutory rate of 9 percent running from a "reasonable intermediate date" from the period during which damages were incurred, on an award for intentional infliction of emotional distress following the defendant's default. 2018 WL 704397, *3 (citing N.Y.C.P.L.R. § 5001).

Pre-judgment interest in New York State is governed by Chapter Eight, Article 50 of the New York Civil Practice Law and Rules ("N.Y.C.P.L.R."). N.Y.C.P.L.R. Section 5001 authorizes a plaintiff to recover interest upon "damage awards in specified categories of actions at law, such as breach of contract actions." *Mahoney v. Brockbank*, 35 N.Y.S.3d 459, 460 (2016). Section 5002, which permits plaintiffs to recover interest "upon the total sum awarded . . . in any action, from the date the verdict was rendered or the report or decision was made to the date of entry of final judgment," N.Y.C.P.L.R. § 5002, governs "actions not covered under [Section] 5001," *Mahoney*, 35 N.Y.S.3d at 460.

Plaintiffs initially alleged that Defendant's conduct deprived them of "the full use and enjoyment of their property," Dkt. No. 1 at ¶ 37, suggesting that their award is governed by Section 5001. Nevertheless, in granting Plaintiffs' motion for a default judgment, the Court dismissed Plaintiffs' claims based upon their ability to enjoy their property, and its determination of Defendant's liability for intentional infliction of emotional distress was unconnected to Plaintiffs' enjoyment of their property. Dkt. No. 9 at 7-15. Moreover, "courts of New York State have consistently held that pre-verdict interest is *not* available on an award of compensatory damages . . . [because] compensatory damages are unliquidated, not easily quantified[,] and not easily divided into specific time periods." *McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 672 N.Y.S.2d 230, 235 (Sup. Ct. 1997) (internal citations omitted) (collecting cases). A survey of New York State case law further indicates that Section 5001 contemplates property-based torts

such as conversion or other tangible deprivations, and not personal injury cases of this kind. *See, e.g.*, *Skonieczki v. Park Ave. Assocs. in Radiology, P.C.*, 211 N.Y.S.3d 878, 892 (N.Y. Sup. Ct. 2024) ("Conversion is a legal claim and could entitle the [p]laintiffs to prejudgment interest."); *Savino v. Savino*, 194 N.Y.S.3d 477, 481 (2023) (award of interest was proper where defendant had willfully failed to distribute the contents of a marital account); *New York State Thruway Auth. v. Allied Waste Servs. of N. Am., LLC*, 41 N.Y.S.3d 143, 144 (2016) (award of interest calculated from the "earliest ascertainable date a cause of action for damage to property exist[ed]").

Section 5002, which allows "interest [to be] recovered upon the total sum awarded . . . in any action, from the date the verdict was rendered or the report or decision was made to the date of entry of final judgment," therefore controls in this action. N.Y.C.P.L.R. § 5002; *see Mahoney*, 35 N.Y.S.3d at 460. Where, as here, "the determinations of liability and damages are bifurcated, the general rule is that prejudgment interest under [Section] 5002 runs from the date of the verdict, report or decision as to liability, rather than from the date of the verdict, report or decision as to damages." *Mahoney*, 35 N.Y.S.3d at 461 (citing, *inter alia*, *Love v. State*, 78 N.Y.2d 540, 542-544 (1991)). New York State law provides a statutory interest rate of "nine per centum per annum." N.Y.C.P.L.R. § 5004.

Here, the Court determined liability when it issued the Default Order. Dkt. No. 9. Each Plaintiff is therefore entitled to prejudgment interest to be recovered upon their respective awards dating from September 25, 2025 to entry of this judgment. The Report-Recommendation is accordingly modified in part to require Defendant to pay prejudgment interest on the amount of compensatory damages awarded to each Plaintiff.

Plaintiffs did not raise the issue of post-judgment interest. However, for the avoidance of doubt, the Court notes that its determination of damages is a "federal judgment" within the

meaning of 28 U.S.C. § 1961, which provides for post-judgment interest on "any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961; *see Cappiello v. ICD Publications, Inc.*, 720 F.3d 109 (2d Cir. 2013). The federal post-judgment rate of interest is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961. Prejudgment interest becomes "part of the judgment itself" for purposes of post-judgment interest accrual. *Mahoney*, 35 N.Y.S.3d at 460-461. Plaintiff Burley's award of damages, inclusive of prejudgment interest, is therefore $27,231.51; Plaintiff Thomas's is $16,338.90. Once judgment is entered, interest will accordingly accrue at a rate of 4.41%.

* * *

Upon review, the Court discerns no clear error in Magistrate Judge Stewart's remaining findings and recommendations. As a result, the Court adopts the Report-Recommendation as modified, as set forth above.

## IV. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation is **ADOPTED as modified**, as set forth above, and further

**ORDERS** that the Clerk serve a copy of this Order on all parties in accordance with the Local Rules and close the case.[3]

---

[3] The Clerk shall also provide Defendant with copies of all unreported decisions cited herein.

**IT IS SO ORDERED.**

Dated: September 22, 2026
Albany, New York

Anne M. Nardacci
Anne M. Nardacci
U.S. District Judge